# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:23-cr-00089-SE |
| | ) | |
| EVAN GADAROWSKI | | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States urges the Court to accept the parties' plea agreement and sentence the defendant to 240 months' imprisonment, followed by 10 years of supervised release.   The defendant pleaded guilty to one count each of distribution and possession of child pornography based on his conduct over the course of many months in what was essentially a long-running catfishing scheme.   The defendant's crimes first came to light when a 14-year-old Nashua girl reported having been blackmailed by an individual using a Snapchat account that was ultimately linked to the defendant.   Further investigation revealed that the defendant was using several social media accounts to target teenaged girls online and solicit them for nude and/or sexually explicit images.   The defendant accomplished this by using sexually explicit images and videos of one minor victim (MV1) and adopting them as part of a fictitious online persona.   Using this fictious persona, the defendant posed as a bisexual female and pursued online relationships with high-school aged girls, sending sexually explicit images and videos of MV1 to his targets and inducing them to send sexually explicit images and videos of themselves in return.   After getting what he wanted, the defendant turned his exploitation of these victims into a money-making scheme by selling collections depicting some of his victims to others online.   For many of his victims, the defendant's crimes have had devastating and life-altering consequences.

- 1 -

The binding plea agreement contemplates a sentence in the range of 120 to 240 months. The United States urges the Court to accept the parties' plea agreement and impose a sentence of 240 months' imprisonment.

## SENTENCING GUIDELINES

The United States agrees with the Probation Officer's calculation of the guideline sentencing range, which fixes the defendant's sentencing range at 262 to 327 months. Under *United States v. Booker*, 543 U.S. 220, 245 (2005), the Sentencing Guidelines are merely advisory. Nonetheless, at sentencing, "district courts are still required to 'begin all sentencing proceedings by correctly calculating the applicable Guidelines range.'" *United States v. Millan-Isaac*, 749 F.3d 57, 66 (1st Cir. 2014) (quoting *Gall v. United States*, 552 U.S. 38, 49 (2007)). "[C]orrectly calculating the GSR serves an important function; it provides a 'framework or starting point' to guide the exercise of the court's discretion." *Millan-Isaac*, 749 F.3d at 66 (quoting *Freeman v. United States*, 564 U.S. 522, 529 (2011)). After giving both parties an opportunity to be heard, the district court should then consider all of the factors under 18 U.S.C. § 3553(a) to fashion an appropriate sentence. *See Gall*, 552 U.S. at 49-50.

## SECTION 3553(a) FACTORS

The 3553(a) factors support a sentence at the high-end of the range contemplated in the agreement. The nature and circumstances of the offense are incredibly serious. The defendant deceived unsuspecting and vulnerable girls, gaining their trust by concealing his identity and befriending them, then tricking them into sending him sexually explicit images and videos. In some cases, the defendant then circulated those images online, both to perpetuate his catfishing scheme and also for his own financial gain. This conduct was no momentary lapse in

- 2 -

judgment—it went on over the course of many months.   While the defendant admits the conduct

detailed in the PSR, he denies having blackmailed MV1 specifically.   The United States did not

locate communications between MV1 and the defendant establishing that he did, in fact,

blackmail MV1.[1]   However, the defendant did admit in his interview with agents that he would

sometimes play "mind games" with his victims, making comments to suggest that he would

disseminate their images if they did not do as he directed.   The communications between the

defendant and the minor female referenced in Paragraph 8 of the PSR exemplify this.[2]

      The anguish and anxiety that the defendant's conduct caused and continues to cause for

his victims cannot be overstated.   One victim of whom the defendant sold collections of images,

MV2, continues to receive unsolicited contact from online strangers who have her images

because of the defendant.[3]   Another victim, "Dahlia" (identified as MV9 in the PSR), recounts

in her victim impact statement the trauma that she has endured as a result of the defendant's

conduct, as well as the tens of thousands of dollars she has incurred and will continue to incur in

counseling, medication, and other costs attributable to the defendant.[4]   Almost as disturbing as

---

[1] The United States did locate communications between the defendant and others wherein he brags about having blackmailed MV1.   See PSR ¶ 12, 15.

[2] When the victim in that case tried to refuse the defendant's requests for additional pictures, he responded by listing off names of the victim's contacts, suggesting that he would disseminate her pictures to those individuals if she did not do as he demanded.   When she resisted further, the defendant responded, "you are not listening, you want to get sent."

[3] MV2 submitted a victim impact statement, which will be filed as a sealed exhibit (Exhibit 1) to this memorandum.

[4] Dahlia submitted a victim impact statement, which has been appended to the final PSR.   Her restitution request will be filed as a sealed exhibit to this memorandum (Exhibit 2).   At this time, the defendant has not advised his position on Dahlia's restitution request.

the defendant's conduct toward his victims is the pride he seemed to take in his actions. Separate and apart from his catfishing scheme, the defendant actively traded and sold the content he collected from some of his victims to others online, often bragging to his customers about catfishing and blackmailing them.   The defendant also provided some of his customers with identifying information about his victims, even directing some of them to the victims' personal social media accounts.   This, in turn, perpetuated the victims' suffering by enabling others to contact the victims and harass them directly.

Regarding the defendant's history and characteristics, the PSR reflects that he was raised in a loving and supportive household and that his childhood was free of any abuse or neglect. He reported difficulty forming friendships both as a child and an adult.   He was diagnosed with ADHD as a child and, more recently, with Autism Spectrum Disorder.   He also described having an addictive personality and reported a history of problematic gambling.   He reported use of alcohol and marijuana and has never attended substance abuse treatment.   He is currently attending counseling with several mental health providers, which was prompted by the criminal investigation in this case.

Despite the absence of any scorable criminal history, the defendant's conduct in this case was prolonged, taking place over many months and impacting the lives of numerous victims. Moreover, the investigation revealed an earlier incident wherein it was discovered that the defendant had been making surreptitious video recordings of a family member and had likewise disseminated those recordings online.   No charges resulted from this earlier incident.

A troubling aspect of the defendant's history and characteristics includes his conduct during his short stint on pretrial supervision.   Following the defendant's guilty plea in October

- 4 -

of last year, the defendant was permitted to remain on bond subject to strict conditions, to include location monitoring, no computer or internet access without the approval of his probation officer, and the installation of computer monitoring software on any approved devices. Approximately one month after his location monitoring was enabled, the defendant failed to return home before his curfew.   When questioned by his probation officer, the defendant advised that he needed to go to the grocery store.   In fact, the defendant's location monitoring data reflected that he had been at the Dover Public Library.   This prompted a closer review of his location monitoring data.   The data reflected that the defendant had been frequenting the Margaritas Restaurant in Dover, including at times when the restaurant was not open for business.   Given the time, frequency, and duration of these visits, it was apparent that the defendant was not eating at the restaurant.

The defendant's probation officer traveled to Margaritas on December 8, 2023, and observed the defendant seated in his car in the parking lot at approximately 9:42 a.m.   Upon approaching the car, the defendant's probation officer observed that he was using an unapproved laptop computer connected to Wi-Fi.   The defendant admitted that he was using the internet to access social media on a computer that was not equipped with the required monitoring software. Based on these violations, the defendant's bail was revoked and he has remained in custody since December 2023.   The defendant's numerous and flagrant violations, all committed within a very short time of commencing supervision, as well as his deception with his probation officer, are extremely concerning and underscore the need for a sentence that affords specific deterrence, promotes respect for the law, and protects the public.

**VICTIM IMPACT**

The defendant's crimes have had devastating consequences for his victims.   Several victims have submitted or are expected to submit victim impact statements for the Court's consideration.   At least one victim will attend the hearing remotely and may address the Court at sentencing.

The letters submitted by the defendant's loved ones tell of his kindness, his compassion, his gentle heart and giving nature.   But the letters submitted by his victims tell a different side of the defendant—one that was cold and calculated and selfish.   The defendant did not treat his victims with kindness or compassion.   In those interactions, he was not a "giver," but a "taker." In fact, he took far more from his victims than their private pictures.   He took their sense of security, their dignity, their ability to trust in others and to build meaningful relationships.   What MV2 remembers most about her interactions with the defendant was his "complete lack of remorse and humanity."   He instilled fear and anxiety in her that have continued to follow her in her adult life.   Similarly, "Dahlia" describes the profound anxiety and depression caused by the defendant's exploitation of her, which caused extreme weight loss, hair loss, and ultimately forced her to withdraw from college.   The defendant committed his crimes from behind the safety of a computer screen, but his victims have endured long-lasting and real-world consequences.   The victims will work their entire lives to regain all that the defendant took from them.   While the defendant is facing a significant sentence, his victims will continue to suffer the repercussions of his conduct long after he is released from prison.

**RESTITUTION**

Restitution in this case is mandatory pursuant to 18 U.S.C. § 2259A.   Only one victim,

- 6 -

"Dahlia," is seeking restitution at this time.   She has requested an award of $125,000 to cover the full amount of her losses, which includes costs for past and future counseling, medical appointments, medication, lost income, and attorney's fees.   *See* 18 U.S.C. § 2259(b)(3). Dahlia's restitution request will be filed as a sealed exhibit to this sentencing memorandum.

The PSR reflects that the defendant has a 401K account in the amount of $5,120.   PSR ¶ 89.   The United States requests that the defendant be ordered to liquidate his 401(k) and pay the proceeds towards his restitution obligation within 60 days of sentencing.   The government additionally requests that the defendant be required to pay interest on any outstanding restitution balance.   *See* 18 U.S.C. § 3112(f) (noting the default position that interest is required on any restitution of more than $2,500 unless the Court finds the defendant does not have the ability to pay).   With regard to his ability to pay interest, the defendant has a history of fulltime employment that began in 2017 and he was employed continuously until approximately one month before he was taken into custody in this case.   He is also represented by retained counsel.

The United States urges the Court to order restitution to Dahlia in the amount requested. The United States also asks the Court to order that any restitution amount ordered shall be due and payable immediately and subject to immediate enforcement by the United States.

### RECOMMENDATION AND REQUEST FOR A VARIANCE

Although the United States' recommendation in this case represents a slight downward variance from the GSR, it reflects the statutory maximum penalty on the distribution count and contemplates a concurrent sentence for the possession offense.   The proposed sentence reflects the egregiousness of the defendant's conduct while also accounting for his decision to enter into a pre-indictment plea, to accept a substantial sentence, and to spare the victims from having to

endure a potentially traumatic public trial.   It is sufficient, but not greater than necessary, to ensure just punishment, promote respect for the law, afford specific and general deterrence, and to protect the public.   While it is a higher sentence than those imposed in many distribution and possession cases, his guidelines are also significantly higher than most defendants charged with the same offenses.   This is due to the application of the cross-reference to production, which reflects a more serious course of conduct and heightened culpability than the typical distribution/possession cases which, in turn, warrants the sentence sought here.

## CONCLUSION

Based on the foregoing, the Court should accept the parties' plea agreement and impose a sentence of 240 months followed by 10 years of supervised release.

Respectfully submitted this the 29th day of April, 2024.

JANE E. YOUNG
United States Attorney

By:   /s/ Kasey A. Weiland
Assistant U.S. Attorney